Date signed September 06, 2007



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DARREN LEE EYLER | : | Case No. 05-32014PM |
| | : | Chapter 13 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| DARREN LEE EYLER | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 06-1671PM |
| | : | |
| 3 VISTA COURT LLC | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

## MEMORANDUM OF DECISION

This matter came before the court for trial on June 21, 2007. The following is a summary of the court's Proposed Findings of Fact and Conclusions of Law.

The Debtor, Darren Lee Eyler ("Eyler"), sustained serious injuries at work and fell behind on payments to Ever Home Mortgage Co., f/k/a Alliance Mortgage Co., a creditor secured by the first lien upon the family home owned by him and his wife, Susan. Following receipt of a flyer from an entity called Home Savers Plus, LLC ("Home Savers"), Eyler contacted its representative, Luther Hector ("Hector"), by telephone, telling him that his house was in foreclosure and he needed help in stopping the sale. Hector told him that he helped people before and that he could help him now. Prior to that conversation Hector had found out

the amount required by the secured lender to halt the foreclosure sale and told Mr. Eyler that he could come up with that sum, provided that, in exchange for stopping the foreclosure, Hector would receive $60,000.00 when the Debtor refinanced the property. The Debtor, at this point, was in desperate straits and would have agreed to anything to stop the foreclosure. Hector advised him that, prior to advancing the money to save the house from foreclosure, he needed to see the house and, in due course, appeared at the house with two other men, one of whom was a contractor introduced to Mr. Eyler as Mr. Ware. They inspected the house and determined that there was sufficient equity for them to go forward.

At the time of the foreclosure sale, the Eylers owed $165,509.00 to the mortgage company, together with $1,595.92 in estimated attorney's fees and costs. The court finds that the value of the subject property at that time was $280,000.00. This finding is based upon the Debtor's testimony and his report of sales of adjacent properties, as well as upon a liquidated damage provision in the agreement negotiated by Hector.

The auction sale was set for July 8, 2005. The Eylers were to meet Hector that morning at the Home Savers' office at 1717 K Street, N.W., Washington, D.C., at 10:30 a.m., to complete the required paperwork. However, Debtor got lost and the Eylers did not arrive until 11:00 a.m. Time was of the essence as the foreclosure was set for 1:00 p.m. that day, and the funds required to bring the Eylers current had to be delivered to the law firm handling the foreclosure in advance of the scheduled time of the sale. The parties went to a conference room in the office used by Hector. They were joined by a Mr. Brandt, and a notary public was called in after the papers were signed to provide the acknowledgments. Following the signing of the papers, $15,341.32 was delivered to the foreclosing attorney (Ex. 6, 7, and 8). Hector promised to help the Eylers to obtain refinancing. No real effort was made by him to do so, and nothing came of that. Of course, either of the Eylers could have filed a bankruptcy as Eyler had done previously under Chapter 13 to stop foreclosure, but they were discouraged from doing so by Hector. Darren Eyler had filed a case under Chapter 13 (Case No. 03-19513) that was dismissed as a result of plan payments not being made. For whatever reason, Debtor's employer failed to deduct funds from Mr. Eyler's paycheck for the payments to the Trustee, and, as a result, that case was dismissed on the motion of the Chapter 13 Trustee. Debtor claimed to be ignorant of the fact that $474.00 a month plan payment was not being taken from his salary.

This case, purely and simply, represents an attempt by Hector and his associates to obtain the $115,000.00 equity in Debtor's real property for $15,341.32.  The Eyler's were vulnerable and agreed to pay that advance back together with $45,000.00 more, were they able to refinance the property before August 9, 2005 (Ex. 18 and 26).  It is difficult to conceive of a transaction more in the sights of the General Assembly's  remedial legislation found in the Protection of Homeowners in Foreclosure Act, MD CODE ANN. REAL PROP. §§ 7-301 to 7-321 (2006 Supp.)  Defendant argues that this emergency legislation, that became effective on May 26, 2005, (Acts 2005, Ch. 509, Section 2),  is inapplicable, because the July 8, 2005, foreclosure sale was the consummation of a foreclosure proceeding commenced in 2003.  The court finds no such exception in the statute, and § 7-302(b) appears to direct precisely to the contrary.  (The statute applies to "activities or providing services designed or intended to transfer title to a residence in foreclosure directly or indirectly . . . .")  It is not the foreclosure that triggers the statute, but rather the activities and services leading to transfer of title.

The Eylers continue to live at 3 Vista Court with their son and daughter.  It is claimed that any payments made to Ever Home following the lump sum payment by the Defendant were made by the Eylers.  The court finds the testimony of Darren Eyler credible in all respects.

The court's Proposed Findings and Conclusions made pursuant to 28 U.S.C. § 157(c)(1) accompany this Memorandum.

cc:
Tonya L. Waller, Esq., 1629 K Street, N.W., Suite 300, Washington, DC 20006
Scott C. Borison, Esq., 550 Buckeystown Pike, Frederick, MD 21703
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**