Date signed October 28, 2008



```
                                    _____
                                            PAUL MANNES
                                       U. S. BANKRUPTCY JUDGE
```

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DARREN LEE EYLER, | : | Case No. 05-32014PM |
| | : | Chapter 13 |
| Debtor. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| DARREN LEE EYLER, | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 06-1671PM |
| | : | |
| 3 VISTA COURT LLC, | : | |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**AMENDED**
**PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**
(**as revised after remand**)

### Findings of Fact

    1.    The Plaintiff, Darren Lee Eyler ("Eyler" or "the Plaintiff"), and his wife, Susan Eyler (collectively, "the Eylers"), owned the subject real property known as 3 Vista Court, Thurmont, Maryland, that they acquired by deed recorded November 30, 1994.  At all times material, the property was subject to a lien held by Ever Home Mortgage Company f/k/a Alliance Mortgage Company ("Ever Home") (Exs. 5, 7 and 13).

    2.    As a result of the Eylers' failure to make required payments on the Note secured by a Deed of Trust, Ever Home scheduled a foreclosure sale of the property for July 8, 2005 (Ex. 8).  A foreclosure proceeding was reactivated.  That foreclosure proceeding was stopped by the filing of the first bankruptcy case by Eyler, Case No. 03-19513.  The bankruptcy case was dismissed

on May 25, 2005, on the motion of the Chapter 13 Trustee on account of Eyler's failure to make required plan payments. On July 8, 2005, the amount owed to Ever Home was $167,205.42 (Ex. 5). The amount required to bring the loan current was $15,341.32 (Exs. 8 and 9).

3. Based on the uncontradicted testimony of Eyler, the court finds the value of the subject property on July 8, 2005, was $280,000.00. Eyler's testimony was based on comparable sales in the neighborhood. The court's valuation is also based in part upon the liquidation damages provision in a document signed by the parties calling for the payment of $100,000.00 by the Eylers in the event they failed to comply with various obligations imposed upon them in connection with this transaction (Ex. 15).

4. As a result of receiving a flyer from an entity that called itself Home Savers Plus ("Home Savers"), Eyler called the telephone number listed in the flyer and spoke to a person identified as Luther Hector ("Hector"). Eyler told Hector that his house was in foreclosure and asked if Hector could stop the sale. Hector told Eyler that he had helped people before and could help him now. Prior to their conversation, Hector had found out the amount required to cure the deficiency and bring the Note current. Hector stated that he would help out and pay the amount due that would stop the sale. In exchange for this, Hector would be paid $60,000.00 when the property was refinanced. Presumably, the $60,000.00 to be paid to Hector would come from the proceeds of the refinancing. Hector advised Eyler that it would not be useful to file another bankruptcy case to stop a foreclosure, as he had done previously. Eyler had received other unsolicited messages about foreclosure help, but selected Hector because of the speed with which he said he could act.

5. At all times material, Hector was a principal of Home Savers and of the Defendant, 3 Vista Court LLC.

6. Hector told Eyler that he wanted to see the house before he could commit the money to stop the foreclosure. In due course, Hector arrived at the Eylers' house with two other men – one identified as a "Mr. Ware," later determined to be Barrett Ware ("Ware"), and the other as a contractor. The purpose of their visit was to ascertain the condition of the property so as to enable Hector to determine if there was equity in the property to support the advance and whether the transaction would generate a profit.

7. To effectuate the transaction, on July 8, 2005, the Eylers and their two children went to Home Savers' office at 1717 K Street, N.W., Suite 600, Washington, D.C. Their

-2-

appointment was at 10:30 a.m. The foreclosure sale was scheduled for 1:00 p.m. The Eylers got lost on the way and did not arrive until 11:00 a.m., and as a result, the settlement transaction was rushed through.

      8. The Eylers were ushered into a large conference room by Hector where they were joined by a "Mr. Brant" and later by a notary public. During this hurried session, the Eylers signed the following documents:

> a. A Deed conveying the property to 3 Vista Court LLC executed July 8, 2005, and recorded December 22, 2005 (Ex.1).
>
> b. Two Powers of Attorney appointing Ware as attorney-in-fact to do everything requisite and necessary relating to the property. This enabled 3 Vista Court LLC to transfer or "flip" the property to a third party without the necessity of paying a transfer tax on the Eylers' transfer to 3 Vista Court LLC (Exs. 11 and 12).
>
> c. A contract for the sale of the property by the Eylers to 3 Vista Court LLC for the sum of $170,000.00 (Ex. 14).
>
> d. A document entitled "Addendum 3 Vista Court, Thurmont, Maryland 21788 - Darren & Susan Eyler," wherein the Eylers acknowledged that they were to receive $20,000.00, subject to a credit to the buyer of all moneys paid to stop the foreclosure sale and less "any sums paid to maintain payments on the mortgage until closing." This document stated that the Eylers were to vacate the property by September 9, 2005, at 5:00 p.m., subject to a penalty of $500.00 a day for each day after that date that the Eylers did not vacate the property, as well as that the Eylers would be subject to liquidated damages of $100,000.00 in the event they failed to comply with the terms of the contract. This document also references an option granted to the Eylers to repurchase the property (Ex. 15).
>
> e. Affidavits reflecting the absence of tax lien judgments or other encumbrances on the property (Exs. 16 and 17).
>
> f. An "Option to Purchase" also signed by Barrett Ware that gave the Eylers an unassignable option to repurchase the subject property for $215,000.00, with all costs of the resale to be borne by the Eylers (Ex. 18).
>
> g. An "Assignment of Proceeds" whereby the Eylers, as assignors, agreed to turn over to 3 Vista Court LLC $60,341.32 and "all its [sic] rights and interest in and to certain proceeds from settlement on the property commonly known as . . . ." (Ex. 26).

      9. The Eylers were not presented with a HUD-1 Settlement Statement, Truth-in-Lending disclosures or documents required under the Maryland Protection of Homeowners in

Foreclosure Act ("PHIFA"), MD. CODE ANN. REAL PROP. §§ 7-301 to 7-321 (2006 Supp.), such as a foreclosure consulting contract (PHIFA § 7-306(a)), a Notice of Rescission (PHIFA § 7-306(c)) or a Notice of Transfer of Deed or Title (PHIFA § 7-310).

10.  There was no "settlement" of the transaction as defined by PHIFA § 7-311(a)(5) in that the transaction was not conducted by a settlement agent who was not employed by or an affiliate of the Defendant. While the sales contract designated Oberg & Berlin as the settlement agent, that entity had nothing whatsoever to do with the transaction.

11.  The terms by which the Eylers could repurchase their residence by August 9, 2005, at 5:00 p.m., by the payment of $45,000.00 in addition to the $15,341.32 advanced on their behalf, were unfair and indubitably commercially unreasonable. The interest rate charged for the advance was well in excess of 3000% per annum.

12.  But for the intervention of the Defendant, the foreclosure sale would have proceeded as scheduled. However, the fact remains that because of the approximately $100,000.00 of equity that the Eylers had in the property, they would have had the benefit of the surplus realized at the sale. *Cf. Johnson v. Wheeler*, 492 F.Supp. 2d 492, 508 (D. Md. 2007). The promise by the Defendant to pay the Eylers $20,000.00 of "net proceeds" was illusory because of the Eylers' obligation to repay the Defendant the money paid to stop the foreclosure sale and the payments made by it to maintain the mortgage.

13.  The Eylers sustained damages as a result of the Defendant's willful actions in violation of Maryland law by stripping and acquiring their $100,000.00 equity in the property.

14.  The Defendant advanced $15,341.32 on behalf of the Eylers in order to stop the foreclosure.

## Proposed Conclusions of Law

1.  The bankruptcy court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1334(b) a matter related to the case of Darren Lee Eyler, Case No. 05-32014. It is referred to the bankruptcy court for trial by 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland.

2.  This is not a core proceeding and this court submits these Amended Proposed Findings of Fact and Conclusions of Law pursuant to 28 U.S.C. § 157(c)(1).

3.  PHIFA is applicable to this transaction.

4.	3 Vista Court, Thurmont, Maryland, was a "residence in foreclosure" as that term is defined by PHIFA § 7-301(j) in that it was the principal place of residence of the Eylers and a petition to docket a foreclosure had been filed and a foreclosure sale set.

5.	Hector and Ware, individually and as principals of 3 Vista Court LLC, were "foreclosure consultant(s)" as defined in PHIFA § 7-301(b) in that they promised to stop a foreclosure sale to assist the Eylers in obtaining a loan or advance of funds and to save the Eylers' residence from foreclosure. These two individuals rendered "foreclosure consulting service(s)" under PHIFA § 7-301(d).

6.	3 Vista Court LLC is a "foreclosure purchaser" under PHIFA § 7-301(e) as the recipient of a "foreclosure reconveyance" under PHIFA § 7-301(f). It obtained a Deed conveying to it the Eylers' property during a proposed foreclosure proceeding.

7.	The Defendant violated PHIFA by failing to provide the Eylers with required notices (PHIFA §§ 7-306(a), 7-306(c) and 7-310). The Eylers' right to rescind the transfer has yet to commence as 3 Vista Court LLC never complied with the terms of PHIFA § 7-310(a).

8.	The recordation of the Deed prior to the expiration of the Eylers' right to rescind or cancel the transaction was likewise a violation of PHIFA § 7-311(6).

9.	There was an absolute failure to arrange for the requirement of a "settlement" as mandated by PHIFA.[1] The only parties present were principal(s) of the Defendant, a "Mr. Brant" and a notary. Moreover, Ware expressly disclaimed in Exhibit 19 "that it is very unlikely that a loan could be obtained . . . to repurchase the property . . . ." Not only was there no evidence of the Eylers' reasonable ability to repurchase the property (PHIFA § 7-311(b)(1)), there was an express statement by the Defendant of their inability to do so.[2]

---

[1]	PHIFA § 7-311(a)(5) defines "settlement" as:

> "Settlement" means an in-person, face-to-face meeting with the homeowner to complete final documents incident to the sale or transfer of real property, or the creation of a mortgage or equitable interest in real property, conducted by a settlement agent who is not employed by or an affiliate of the foreclosure purchaser, during which the homeowner must be presented with a completed copy of the HUD-1 Settlement Form.

[2]	PHIFA § 7-311(b)(1) provides:

> (b) A foreclosure purchaser may not:
>
> (1) Enter into, or attempt to enter into, a foreclosure reconveyance with a homeowner unless:

-5-

10. The Eylers have the right to rescind this transaction. The three business day period within which they may exercise their right to rescind the foreclosure reconveyance never began to run as the Defendant did not provide the Eylers with the Notice of Transfer of Deed of Title required under PHIFA § 7-310(a). ("The time during which the homeowner may rescind the contract or transfer does not begin to run until the foreclosure purchaser has complied with this section." PHIFA § 7-310(e)).

11. The right to rescind is not conditioned on the repayment of funds advanced by the Defendant. PHIFA § 7-310(i).

12. The Deed from the Eylers to the Defendant was unlawfully recorded before the expiration of the rescission period. PHIFA § 7-310(k).

13. Accordingly, under PHIFA and upon rescission, within 60 days, the Eylers must repay the Defendant all money spent by it on their behalf, together with interest calculated at the rate of 8% a year. The only money spent appears to be the $15,341.32 advanced to stop the foreclosure. PHIFA § 7-305(e).

14. While the transaction was characterized as a sale, the substance of the transaction as marketed to the Eylers was a loan. There is no other explanation for the terms of the Assignment of Proceeds (Ex. 26) that provides for the payment of $60,341.32 from the proceeds of any sale by the Eylers to 3 Vista Court LLC. As such, the Defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* when it failed to provide the appropriate disclosures and the notice of the right to rescind. The Eylers are entitled to statutory damages totaling $1,500.00 and attorneys fees for this violation.

---

(i) The foreclosure purchaser verifies and can demonstrate that the homeowner has or will have a reasonable ability to pay for the subsequent reconveyance of the property back to the homeowner on completion of the terms of a foreclosure conveyance, or, if the foreclosure conveyance provides for a lease with an option to repurchase the property, the homeowner has or will have a reasonable ability to make the lease payments and repurchase the property within the term of the option to repurchase;

(ii) The foreclosure purchaser and the homeowner complete a formal settlement before any transfer of an interest in the property is effected; and

(iii) The foreclosure purchaser complies with the requirements of the federal Home Ownership Equity Protection Act, 15 U.S.C. 1639, and its implementing regulations for any foreclosure reconveyance in which the homeowner obtains a vendee interest in a contract for deed[.]

-6-

15. Under MD. CODE ANN. COMM. LAW §12-404(d) (2005), the maximum rate of interest charged on a secondary mortgage loan may not exceed 24% per annum. The collection of interest at the exorbitant rate charged by the Defendant amounted to the collection of an "unlawful debt,"[3] as defined by the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as it is more than twice the enforceable legal rate. This act brings the Defendant's conduct in lending money at a rate usurious under Maryland law and within the purview of RICO. *See* 18 U.S.C. § 1962; *United States v. Weiner*, 3 F.3d 17, 24 (CA1 1993); *United States v. Giovanelli*, 945 F.2d 479 (CA2 1991); *United States v. Megale*, 363 F. Supp. 2d 359 (D. Conn. 2005). A criminal violation need not be prosecuted as a prerequisite to a RICO action. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 492 (1985).

16. RICO §1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." The bankruptcy court has subject matter jurisdiction over this RICO claim as a related matter and may issue this proposed conclusion. *See, Ghee v. Retailers Nat'l Bank*, 271 Fed. Appx. 858 (CA11 2008).

17. The Plaintiff sustained damages of $84,658.78 on account of this RICO violation, that is the loss of the $100,000.00 equity in his residence, less the payment made on his behalf of $15,341.32.

18. Under RICO, the Plaintiff is entitled to threefold damages or a total of $253,976.34 plus reasonable attorney's fees that will be allowed after the filing of an application for compensation.

---

[3] RICO § 1961(6) provides:

As used in this chapter –

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate[.]

These Amended Proposed Findings of Fact and Conclusions of Law are submitted to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 157(c)(1).

cc:   3 Vista Court LLC, c/o Michelle E. Stawinski, P.O. Box 35, Riverdale, MD 20738
      Tonya L. Waller, 1629 K Street, N.W., Suite 300, Washington, DC 20006
      Michelle E. Stawinski, P.O. Box 35, Riverdale, MD 20738
      Darren Lee Eyler, c/o Scott C. Borison, Esq., 550 Buckeystown Pike, Frederick, MD
        21703
      Scott C. Borison, Esq., 550 Buckeystown Pike, Frederick, MD 21703
      Douglas Bowman, 550 Buckeystown Pike, Frederick, MD 21703
      United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Amended Proposed Findings of Fact and Conclusions of Law**